IN THE UNITED STATES DISTRICT COURT
FOR THE SOUTHERN DISTRICT OF ALABAMA
SOUTHERN DIVISION

| | |
|---|---|
| **SCHAMBEAU PROPERTIES, LP,** | ) |
| | ) |
| **Plaintiff,** | ) |
| | ) |
| v. | ) CIVIL ACTION 11-0029-WS-B |
| | ) |
| **WAFFLE HOUSE, INC.,** *et al.*, | ) |
| | ) |
| **Defendants.** | ) |

**ORDER**

This matter comes before the Court on defendant Alabama Sound Investments, Inc.'s Motion for Summary Judgment (doc. 66). The Motion has been briefed and is now ripe for disposition.[1]

**I.  Background.**

  *A.  Nature of the Case.*

This action arises from allegations that a parcel of commercial property in Bayou La Batre, Alabama has been damaged by storm water runoff from development of adjacent property. In an Amended Complaint filed in state court, plaintiff, Schambeau Properties, LP, asserted overlapping sets of claims against named defendants Waffle House, Inc., Sonic Restaurants, Inc., and Alabama Sound Investments, Inc. ("ASI"), as well as against certain fictitious defendants.[2] ASI removed this action to this District Court on January 14, 2011. Even

---

[1] The Rule 16(b) Scheduling Order (doc. 10) entered by Magistrate Judge Bivins provided, in part, that "[i]f a party's exhibits in support of or in opposition to a motion exceed fifty (50) pages in the aggregate, then that party must deliver a courtesy hard copy of those exhibits to the Judge's chambers by mail or hand delivery." (Doc. 10, ¶ 13(c).) Although the Rule 56 motion was accompanied by more than 100 pages of exhibits, movant did not submit courtesy copies of same. The Court in its discretion will consider the motion at this time, despite movant's omission.

[2] Sonic Restaurants, Inc. remains formally listed as a defendant in this case. However, the record reflects that on November 19, 2010, Schambeau and Sonic executed and filed a Stipulation of Dismissal, reflecting their stipulation "as to the dismissal of Sonic (Continued)

though the Amended Complaint was confined to purely state-law causes of action, ASI predicated federal jurisdiction on the diversity of citizenship provisions of 28 U.S.C. § 1332.[3]

The Amended Complaint alleges four causes of action against ASI. As the factual underpinnings for these claims, ASI alleges that "[o]n or about the 1st day of January, 2008, through and including the date of this Complaint, … [ASI] … has caused the property owned by the Defendant on the east side of Wintzell Avenue in Bayou La Batre, Alabama to be stripped of its natural vegetation, filled and elevated in the course of constructing a Waffle House Restaurant proximately causing waters to be collected, channelized, diverted and directed onto the

---

Restaurants, Inc. as a party defendant without prejudice." (Doc. 1-1, at 69.) On November 22, 2010, the state court entered an order granting that stipulation for dismissal. (*Id.* at 75.) All claims against Sonic Restaurants, Inc. having been dismissed more than a year ago, the Clerk of Court is **directed** to **terminate** that entity as a party defendant to this action. Moreover, because fictitious party pleading is generally not permitted in federal court, and plaintiff has made no showing that any limited exception might apply here, all of Schambeau's claims against fictitious defendants are **dismissed without prejudice**. *See, e.g., Richardson v. Johnson*, 598 F.3d 734, 738 (11th Cir. 2010) ("As a general matter, fictitious-party pleading is not permitted in federal court."); *CSX Transportation, Inc. v. United Transp. Union*, 2007 WL 1643172, *1 n.1 (11th Cir. June 7, 2007) ("the Federal Rules do not authorize suit against fictitious parties"); *Featherstone v. Home Oil Co.*, 2011 WL 5978774, *1 n.4 (S.D. Ala. Nov. 8, 2011) (subject to a limited exception, "fictitious party practice is not permitted in federal court").

[3] This assertion of federal jurisdiction was proper. In the Amended Complaint, plaintiff specifically demands compensatory damages on its state-law claims in the amount of $350,000. Moreover, it has been asserted (and never questioned) that there is complete diversity of citizenship between plaintiff and the named defendants. Schambeau is an Alabama citizen for diversity purposes (inasmuch as it is a limited partnership whose sole partner, Schambeau Lands, Inc., is an Alabama corporation with its principal place of business in Alabama). Waffle House is a Georgia citizen (because it is a Georgia corporation with its principal place of business in Georgia), and ASI is a Mississippi citizen (because it is a Mississippi corporation with its principal place of business in Mississippi). Plaintiff dismissed its claims against Sonic Restaurants prior to removal; therefore, that entity's citizenship is jurisdictionally irrelevant. And the citizenship of fictitious defendants is not considered for diversity purposes. *See* 28 U.S.C. § 1441(a) ("For purposes of removal under this chapter, the citizenship of defendants sued under fictitious names shall be disregarded."); *see also Walker v. CSX Transp., Inc.*, 650 F.3d 1392, 1396 (11th Cir. 2011) ("that the fictitious defendants were likely Georgia citizens did not destroy complete diversity because § 1441(a) requires that fictitious 'named' parties be disregarded for purposes of diversity jurisdiction"). Accordingly, federal subject-matter jurisdiction was properly invoked in this case because there is complete diversity and the amount in controversy exceeds $75,000.

properties of the Plaintiff situated directly south of and contiguous to the properties of [ASI]." (Amended Complaint, ¶ 28.)  The Amended Complaint further alleges that Schambeau repeatedly placed ASI on notice that these activities "caused waters and sedimentation to be channelized, diverted and directed onto the properties of the Plaintiff and the Plaintiff further request[ed] that the continued trespass activities cease." (*Id.*, ¶ 29.)  According to the Amended Complaint, ASI ignored these requests "and constructed the Waffle House Restaurant consisting of impervious surfaces … directing water and sedimentation on a continuous basis from the Defendant's construction site and restaurant site directly onto the properties of the Plaintiff." (*Id.*, ¶ 30.)  In its pleading against ASI, Schambeau emphasizes "the site of the Waffle House Restaurant" and references "its construction and installation of sidewalks, pavement, asphalt and roofs by Defendant, Alabama Sound Investments, Inc." (*Id.*, ¶ 31.)

On the strength of these factual allegations, Schambeau asserts claims against ASI on theories of continuing trespass (Count Nine), continuing nuisance (Count Ten), negligence (Count Eleven), and wantonness (Count Twelve).  No other portion of the Amended Complaint purports to state a claim against ASI.  Now ASI maintains that there are no genuine issues of material fact and that it is entitled to judgment as a matter of law on all of Schambeau's state-law claims.

### B.     *Relevant Facts.*[4]

In April 1999, ASI purchased a parcel of real estate bearing the street address of 13025 Wintzell Avenue, Bayou La Batre, Alabama.  (Doc. 67, Exh. 2.)  ASI redeveloped the property and, later in 2009, completed construction of a Sonic Drive-In Restaurant at the Wintzell Avenue location, which ASI owned and operated for several years. (McClain Dep. (doc. 67, Exh. 9), at 11.)[5]  Throughout the time period of April 1999 through March 2009, ASI's property was

---

[4] The Court is mindful of its obligation under Rule 56 to construe the record, including all evidence and factual inferences, in the light most favorable to the nonmoving party, resolving all reasonable doubts about the facts in favor of the non-movant.  *See Skop v. City of Atlanta, GA*, 485 F.3d 1130, 1136 (11th Cir. 2007).  Thus, plaintiff's evidence is taken as true and all justifiable inferences from the record are drawn in its favor.

[5] The development activities undertaken by ASI at that site included demolishing previous improvements (namely, a service station) on the property, and constructing a new "parking lot, curbs, fencing, building, the whole works" for the Sonic restaurant.  (McClain Dep., at 46.)  There is no evidence in the record as to whether previous improvements at that site (Continued)

bounded on both the south and the east by undeveloped lands owned by Schambeau (the "Schambeau Property").[6]  In approximately late 2008, and in no event later than March 2009, ASI shut down the Sonic restaurant at the Wintzell Avenue site.  (McClain Dep., at 25, 57.)

From the time that construction of the Sonic restaurant was completed in 1999 until ASI closed the facility in or about late 2008, ASI made no changes to the site in terms of pavement, ground disturbance or ground movement.  (McClain Dep., at 57.)[7]  Additionally, Schambeau was aware of no water drainage issues or problems from the ASI property onto the Schambeau Property (whether to the south or to the east of the ASI site) as of 1999.  (Greenspan Dep., at 81.)  The status quo remained unchanged for the next ten years.  (*Id.* at 209-10.)  Schambeau regularly monitored the condition of its property, both through routine maintenance work (*i.e.*, mowing the grass) and through its representative going on-site to observe the property at least several times per year; however, plaintiff observed no water or drainage issues from the Sonic site during this time frame.

On March 3, 2009, ASI sold the southern portion of its parcel to non-party WH Capital, LLC, which subsequently constructed a Waffle House restaurant at that location.  (Doc. 67, Exh.

---

channelized or diverted surface water onto the Schambeau Property.  Nor is there any indication that the amount of surface water runoff from the ASI property onto Schambeau's land increased during or after the Sonic restaurant construction process.

[6]  A Mobile Revenue Commission parcel map display for this area reflects that the Schambeau Property actually consisted of two parcels, one that fronted on Wintzell Avenue and abutted ASI's parcel to the south, and another, much larger back lot that abutted ASI's parcel to the east.  (Doc. 67, Exh. 3.)  Plaintiff intends to develop the Schambeau Property commercially; however, it has not done so to date, except to position a "little office trailer" on the property.  (Greenspan Dep., at 134.)  Schambeau is "not currently using the property."  (*Id.* at 142.)

[7]  Schambeau's Rule 30(b)(6) deponent indicated that the "vertical part" of the Sonic restaurant building had been "kind of torn up" at some point between 1999 and her September 26, 2011 deposition.  (Greenspan Dep. (doc. 67, Exh. 10), at 213.)  Movant's counsel interprets this comment as referring to ASI's removal of certain "drive-up awnings" at the Sonic restaurant after it was closed.  (Doc. 67, at 7.)  Plaintiff has not disputed this characterization.  In any event, no party attaches any significance to the "vertical part" alterations to the Sonic building for purposes of the claims and defenses being litigated herein.

4.)[8]  A certificate of occupancy was issued for that restaurant on August 25, 2009. (Lee Dep. (doc. 67, Exh. 12), at 37.)  The uncontroverted record evidence is that ASI retained no interest in the parcel sold to WH Capital and was not involved in the design or construction of the Waffle House restaurant.  (Williams Dep. (doc. 67, Exh. 11), at 73-74; Lee Dep., at 49.)

Schambeau's awareness of water/drainage problems on its property coincided with the construction of the Waffle House restaurant.[9]  Indeed, plaintiff first learned of drainage issues at that location between August 2009 and October 2009.  (Greenspan Dep., at 81-82.)  The matter initially came to Schambeau's attention in the late summer of 2009 when its "lawn mower maintenance man" reported that he was having difficulty cutting the grass at the Schambeau Property because pooled water had accumulated there.  (*Id.* at 82.)[10]  Although its attorneys promptly confronted Waffle House about the drainage issue, Schambeau never contacted ASI, gave ASI notice of its concerns, or requested that it do anything to correct the drainage problem before filing suit against ASI in August 2010.  (*Id.* at 134, 143.)

Civil engineer (and third-party defendant) Steve Geci has offered expert opinions in this case that surface water naturally flows from the ASI property and Waffle House property to the east, onto the back lot of the Schambeau Property, rather than south onto the portion of the Schambeau Property fronting Wintzell Avenue.  (Geci Dep. (doc. 67, Exh. 13), at 89.)

---

[8]     Although not directly relevant to the pending summary judgment motion, the record reflects that ASI sold the remainder of the Wintzell Avenue parcel where it had operated the Sonic restaurant to non-party Boyz-N-Burgers, LLC on November 19, 2010. (Doc. 67, Exh. 7.)  The record does not state what, if anything, Boyz-N-Burgers did with the parcel after acquiring it.  In any event, this transaction post-dates the August 24, 2010 filing of Schambeau's complaint in state court by nearly three months, and does not appear connected to any claims or defenses joined herein.

[9]     Defendant Waffle House, Inc. has not filed a motion for summary judgment or otherwise participated in the briefing on ASI's motion for summary judgment (which is perfectly reasonable given that no party seeks entry of summary judgment on any claims involving Waffle House).  Nothing in this Order sets forth any findings of fact that are binding on Waffle House, or should be construed as offering opinions or forecasts as to Waffle House's liability in this matter or the strength of Schambeau's claims against it.

[10]    The record does not clearly demonstrate where on the Schambeau Property the water pooling problem is located.  The Amended Complaint alleges, however, that the waters were channelized and diverted from the defendants' property south onto the Schambeau Property.  (Amended Complaint, ¶ 28.)

According to Geci, all drainage from Wintzell Avenue and properties fronting it flows to the east, to the back lot of the Schambeau Property, where it ultimately reaches a drainage ditch (the product of an easement described *infra*) from whence it flows south into the bayou. (*Id.*) The natural flow of water from the ASI and Waffle House properties is east, not south. (*Id.* at 91.) Water does not migrate from the ASI property south, across the Waffle House property and onto the portion of the Schambeau Property that fronts Wintzell Avenue. (*Id.* at 93.)

The Schambeau property was subject to an easement styled "Easement for Drainage Ditch and Back Slope" dated November 12, 1959 and properly recorded with the Mobile County Probate Court. (Doc. 67, Exh. 5.) In that easement, the then-owner of the Schambeau Property granted and conveyed to Mobile County "a right of way or easement for the construction of a drainage ditch with back slopes over and across" that property. (*Id.*) The drainage easement was for a length of 1,610 feet, at a width of 20 feet. (*Id.*; *see also* Geci Dep., at 96.) It runs north to south across the "back lot" portion of the Schambeau Property, carrying runoff from areas west of that back lot (including Wintzell Avenue, the ASI property and the Waffle House property) south to the bayou. As of September 2010, Schambeau was unaware of this easement and had not maintained the drainage ditch on the back lot to the east of the ASI property. (Greenspan Dep., at 62-63, 102.)[11] According to Geci, the ASI and Waffle House properties, as well as all other properties fronting Wintzell Avenue, "need[] that easement to drain to the bayou." (Geci Dep., at 104.)

**II.   Summary Judgment Standard.**

Summary judgment should be granted only "if the movant shows that there is no genuine dispute as to any material fact and the movant is entitled to judgment as a matter of law." Rule 56(a), Fed.R.Civ.P. The party seeking summary judgment bears "the initial burden to show the district court, by reference to materials on file, that there are no genuine issues of material fact that should be decided at trial." *Clark v. Coats & Clark, Inc.,* 929 F.2d 604, 608 (11th Cir. 1991). Once the moving party has satisfied its responsibility, the burden shifts to the non-movant to

---

[11]   Uncontroverted record evidence shows no indication that Schambeau has even attempted to maintain that drainage ditch. (Geci Dep., at 92.) Moreover, in Geci's opinion, if the 20-foot drainage easement on the back lot had been properly maintained, then the Schambeau Property would have drained properly, without the water pooling problems that are the animating force of this litigation. (*Id.*)

show the existence of a genuine issue of material fact.  *Id.*  "If the nonmoving party fails to make 'a sufficient showing on an essential element of her case with respect to which she has the burden of proof,' the moving party is entitled to summary judgment."  *Id.*  (quoting *Celotex Corp. v. Catrett*, 477 U.S. 317 (1986)) (footnote omitted).  "In reviewing whether the nonmoving party has met its burden, the court must stop short of weighing the evidence and making credibility determinations of the truth of the matter.  Instead, the evidence of the non-movant is to be believed, and all justifiable inferences are to be drawn in his favor."  *Tipton v. Bergrohr GMBH-Siegen*, 965 F.2d 994, 999 (11th Cir. 1992) (internal citations and quotations omitted).  "Summary judgment is justified only for those cases devoid of any need for factual determinations."  *Offshore Aviation v. Transcon Lines, Inc.*, 831 F.2d 1013, 1016 (11th Cir. 1987) (citation omitted).

**III.    Analysis.**

ASI's Motion for Summary Judgment identifies several theories for relief.  The only two that need be reached to resolve the Motion are as follows: (i) plaintiff's claims against ASI fail because ASI was not involved in construction, design or ownership of the offending Waffle House site; and (ii) any discharge of water from the ASI property to the Schambeau Property was permitted under Alabama law governing diffuse surface waters.

**A.    *ASI Had and Has No Involvement with the Waffle House Development.***

ASI initially argues that it is entitled to summary judgment for the straightforward reason "that all the allegations in the Amended Complaint stem from one fundamental, and incorrect, premise: that ASI owned, built or controlled the Waffle House."  (Doc. 67, at 9-10.)  This characterization of the Amended Complaint is accurate.  After all, the only factual allegations against ASI in Schambeau's pleading are: (i) that, on or about January 1, 2008, ASI caused its property "to be stripped of its natural vegetation, filled and elevated in the course of constructing a Waffle House Restaurant," such that water was redirected and channelized onto the Schambeau Property to the south of the ASI site; (ii) despite repeated notice from Schambeau, ASI "instituted no corrective measures … and constructed the Waffle House Restaurant" in a manner that "direct[ed] water and sedimentation on a continuous basis from the Defendant's construction site and restaurant site directly onto the properties of the Plaintiff"; (iii) "the site of the Waffle House Restaurant on Wintzell Avenue … [formerly] consisted of naturally vegetated land which has now been filled and stripped … resulting in waters and sedimentation being diverted onto the

properties of the Plaintiff." (Amended Complaint, ¶¶ 28, 30, 32.)[12] No reasonable reading of these factual allegations would support an inference that they relate to any acts or omissions of ASI other than construction of the Waffle House restaurant on Wintzell Avenue in or about January 2008.

The summary judgment record conclusively demonstrates that there are no genuine issues of fact on these matters. In particular, the record shows that ASI had nothing whatsoever to do with the construction of that Waffle House restaurant. Movant's evidence shows (and plaintiff does not dispute) that a third party (WH Capital, Inc.) bought the subject property from ASI in March 2009, that ASI retained no ownership interest in the property, and that ASI had no role in the subsequent design and construction of a Waffle House restaurant at that location. Furthermore, the record is uncontroverted that ASI did not direct, engage or participate in any construction or development activities at its property on Wintzell Avenue on or about January 2008; rather, ASI completed construction on its Sonic restaurant at that location back in 1999, and undertook no further construction projects or modifications at that site during the relevant time period. As the summary judgment record is devoid of facts supporting the premise of Schambeau's claims against ASI (to-wit, that ASI constructed a Waffle House restaurant in approximately 2008 that caused waters and sediment to be diverted and directed onto the Schambeau Property), ASI is entitled to judgment as a matter of law on all of Schambeau's causes of action asserted against it.

In response to this compelling argument, Schambeau identifies no evidence that ASI was in any way involved with the construction of the Waffle House restaurant. Nor does Schambeau articulate any legal theory under which ASI might be held responsible for the actions of others in designing and constructing that restaurant. Instead, plaintiff abandons the factual premise of its Amended Complaint and asserts for the first time that its claims against ASI proceed not from the construction of the Waffle House restaurant, but from "ASI maintain[ing] a facility for over

---

[12] While the Amended Complaint asserts these factual allegations in the context of the continuing trespass claim delineated in Count Nine, those allegations are expressly adopted and incorporated as the factual basis of the continuing nuisance, negligence and wantonness claims set forth in Counts Ten through Twelve. No different or other conduct by ASI is recited in Counts Ten through Twelve as the factual basis for those claims; rather, the only factual foundation identified for all four of Schambeau's state-law causes of action against ASI is that presented in Count Nine.

ten (10) years which … discharged waters onto the property of the Plaintiff." (Doc. 75, at 3-4.) In other words, Schambeau would now shift its claims against ASI from the Waffle House construction in 2008-09 to the Sonic construction in 1999. ASI indeed built and owned that Sonic restaurant. The problem is this: The Amended Complaint clearly specifies that ASI is liable for its activities in connection with the 2008-2009 construction of the Waffle House restaurant (which of course was built on the Waffle House property, not the ASI property), and does not support an inference that Schambeau is suing ASI for other construction or development activities, much less for maintaining a Sonic restaurant on the ASI property over a ten-year period. Plaintiff's *de facto* attempt to amend its pleadings via summary judgment response to assert a brand new, unpleaded set of facts and circumstances giving rise to ASI's liability is impermissible. It is well settled in this Circuit that "[a]t the summary judgment stage, the proper procedure for plaintiffs to assert a new claim is to amend the complaint in accordance with Fed.R.Civ.P. 15(a). A plaintiff may not amend [its] complaint through argument in a brief opposing summary judgment." *Gilmour v. Gates, McDonald and Co.*, 382 F.3d 1312, 1315 (11th Cir. 2004).[13]

   Following the filing of the December 2010 Amended Complaint, Schambeau never sought to amend its complaint to assert new or different claims or supporting facts as to ASI. As such, ASI proceeded all the way through discovery and the summary judgment motion process on the understanding from the Amended Complaint that Schambeau's claims against it flow from alleged wrongdoing in connection with the construction of the Waffle House restaurant on Wintzell Avenue in or around 2008. That theory being entirely unsupported by the evidence, Schambeau cannot be heard in its summary judgment response to change its story, interposing a new argument that its claims against ASI actually flow from ASI's construction of a Sonic

---

[13] *See also Hurlbert v. St. Mary's Health Care System, Inc.*, 439 F.3d 1286, 1297 (11th Cir. 2006) ("Having proceeded through discovery without amending (or seeking to amend) his complaint to reflect that fundamental change, Hurlbert was not entitled to raise it in the midst of summary judgment."); *The Michael Titze Co. v. Simon Property Group, Inc.*, 2010 WL 3995938, *4 (11th Cir. Oct. 13, 2010) (plaintiff who failed to include allegation in complaint was barred from amending complaint through argument in brief opposing summary judgment); *Thampi v. Manatee County Board of Com'rs*, 2010 WL 2600638, *3 (11th Cir. June 30, 2010) (where complaint alleged that defendant retaliated against him "for being a witness," plaintiff could not modify claim in summary judgment brief to argue that defendant retaliated against him for filing a lawsuit).

restaurant in 1999 and the alleged discharge of water from that facility onto the Schambeau Property.[14]

Simply put, Schambeau filed a lawsuit against ASI on the stated ground that ASI had built a Waffle House restaurant in such a way that it allowed storm water runoff to collect on Schambeau's property.  There is no record evidence that ASI ever designed, built, owned or had anything to do with that Waffle House restaurant.  Inasmuch as the factual predicate of the Amended Complaint is affirmatively contradicted by the record, ASI is entitled to judgment as a matter of law on all claims and causes of action asserted against it in this action.

### B.     *No Evidence of Alteration of Status Quo or Substantial Damage.*

Even if Schambeau had properly pleaded claims alleging that ASI had allowed water to be channelized and discharged from the ASI property onto the Schambeau Property for a 10-year period, ASI would remain entitled to summary judgment because no genuine issues of fact are presented.

The proper legal standard to apply to Schambeau's continuing trespass and nuisance claims is not in dispute.[15]  Both sides cite to Alabama's common law concerning diffuse surface

---

[14]   No reasonable interpretation of the Amended Complaint could support the notion that Schambeau was contending that ASI was liable in continuing trespass, continuing trespass, negligence and wantonness for water runoff from its property onto the Schambeau Property for a ten-year period.  The Court cannot agree with plaintiff's conclusory statement in its Rule 56 brief that "the conduct alleged in the Complaint … is that ASI maintained a facility for over ten (10) years which … discharged waters onto the property of the plaintiff."  (Doc. 75, at 3-4.)  This is simply not correct.  The conduct alleged in the Amended Complaint is that in or about January 2008, ASI constructed a Waffle House restaurant on Wintzell Avenue in a manner that caused waters to be channelized, collected, diverted and directed onto the Schambeau Property.  Those are the facts that Schambeau pleaded.  Those are also the facts that Schambeau must live with.  A plaintiff cannot change course during summary judgment briefing by asking the Court to ignore all the facts asserted in its pleadings and instead to replace those factual allegations with a new set more to its liking.

[15]   ASI correctly argues that Schambeau's negligence and wantonness claims are time-barred.  Under Alabama law, the relevant statute of limitations is two or six years for these claims.  *See Smith v. Norfolk Southern R. Co.*, 767 F. Supp.2d 1276, 1278 (S.D. Ala. 2011) ("Under well-settled Alabama law, Smith's negligence claims … are subject to a two-year limitations period."); *Ex parte Capstone Bldg. Corp.*, --- So.3d ----, 2011 WL 2164027, *9 (Ala. June 3, 2011) ("We once again reaffirm the proposition that wantonness claims are governed by the two-year statute of limitations," overruling previously applicable six-year limitations period). There is no evidence that ASI engaged in negligent or wanton conduct within two or six years
(Continued)

-10-

waters, the relevant principles of which appear firmly entrenched. According to the Alabama Supreme Court, "We recognize the common law right of a lower landowner not to be injured by an upper landowner's interference with the natural drainage of surface water onto the lower property. An alteration in the natural flow of surface water would be a wrongful interference with the lower landowner's possessory rights and could constitute trespass or nuisance." *Robichaux v. AFBIC Development Co.*, 551 So.2d 1017 (Ala. 1989). Thus, an upper proprietor (such as ASI) may be held liable under Alabama law when it "channels surface water onto the property of a lower proprietor, when it otherwise would have been scattered and diffused, and by so doing causes damage to the lower proprietor." *Johnson v. Washington*, 474 So.2d 651, 653 (Ala. 1985) (explaining that this rule is not affected by whether the area is within an incorporated town or city). "The proper test is whether or not by reason of that construction the surface water was changed from its natural flow and caused to be deposited on the complainant's property to his damage." *Sargent v. Lambert Const. Co.*, 378 So.2d 1153, 1155 (Ala.Civ.App. 1979); *see also King v. Adams*, 349 So.2d 611, 614 (Ala.Civ.App. 1977) ("although an upper landowner has no duty to protect a lower landowner from the flow of surface water, an upper landowner nonetheless may be responsible for damage sustained by the property of a lower landowner as a result of a change in the status quo").

---

prior to Schambeau's filing of the Complaint in August 2010. To the contrary, the unchallenged record evidence is that ASI developed its property in 1999, and thereafter engaged in no activities that might alter the flow or channelization of water from its property onto the Schambeau Property, whether to the south or to the east. If ASI negligently or wantonly developed its land to dump surface water onto the Schambeau Property, it did so in 1999, more than a decade before plaintiff filed the Complaint. As such, plaintiff's negligence and wantonness claims predicated on that conduct are plainly time-barred. On summary judgment briefing, Schambeau has not acknowledged the limitations defense, nor has it referenced or attempted to advance its negligence or wantonness claims in any way. This Court will not endeavor to formulate a response on plaintiff's behalf to movant's persuasive limitations argument. *See, e.g., Fils v. City of Aventura*, 647 F.3d 1272, 1285 (11th Cir. 2011) ("district courts cannot concoct or resurrect arguments neither made nor advanced by the parties"); *Harris v. Hancock Bank*, 2011 WL 1435500, *2 n.4 (S.D. Ala. Apr. 14, 2011) ("Federal courts generally do not develop arguments that the parties could have presented but did not."); *Pears v. Mobile County*, 645 F. Supp.2d 1062, 1081 n.27 (S.D. Ala. 2009) ("The parties … cannot be heard to balk if the undersigned does not perform their research and develop their arguments for them."). Accordingly, plaintiff's negligence and wantonness claims (Counts Eleven and Twelve, respectively) against ASI are **dismissed** as untimely.

In light of these principles, plaintiff insists that a jury question is presented "[a]s to whether or not the diversion or channelization of water from ASI onto the Schambeau property as the lower property owner is violative of the common law right of the Schambeau property owner not to be injured by interference of the upper property owner with the natural drainage of water." (Doc. 75, at 2)  Plaintiff further contends that a jury should decide "whether ASI as the upper property owner has used it's [*sic*] property in such a way as to substantially interfere with the use and enjoyment of the Schambeau property." (*Id.* at 3.)  In plaintiff's view, "[w]hether the channelization or concentration of waters from the ASI property … onto the property of Schambeau constitutes a private nuisance or continuing trespass is a question of fact for the jury." (*Id.* at 4.)

The fatal flaw in plaintiff's argument is that the record reveals no genuine issue of fact as to whether ASI changed the natural flow of surface water or whether Schambeau was damaged by same.  The summary judgment record reveals, through Steve Geci's expert testimony, that water naturally flows from the ASI property onto the Schambeau Property.  In other words, even in the parcels' undeveloped state, the natural flow of surface water would be from ASI's property onto plaintiff's property.  Plaintiff has not contested or challenged Geci's opinions on this point.  Nor has plaintiff cited evidence that the natural flow has been altered by ASI's operations and activities on its property.  For aught that plaintiff has shown, the flow of water from the ASI property is no different today than it was when the previous owner had erected a service station at that location, and is no different today than when the land was undeveloped.  Without evidence that the status quo of the flow of water has been altered by ASI, Schambeau cannot satisfy a fundamental element of its trespass and nuisance claims under the Alabama authorities cited *supra*.[16]

---

[16]    To be sure, plaintiff argues that its Rule 30(b)(6) deponent, Aleta Greenspan, "confirms that waters from the ASI property flowed from the parking lot through slits onto the Schambeau property after construction." (Doc. 75, at 2.)  But Greenspan testified that she never saw or heard of any water or drainage problems on the Schambeau Property until a full decade after the ASI property had been developed. (Greenspan Dep., at 82-83.)  This is so even though she observed the property at least four times per year from 1999 forward. (*Id.* at 209.)  Her testimony is irreconcilable with plaintiff's litigation posture that water was channeled and diverted from the ASI property onto the Schambeau Property when ASI constructed a Sonic restaurant there.  While Greenspan also testified that "the water coming off Sonic, then with Waffle, it's all wicking toward my property" (*id.* at 79), this self-serving opinion appears
(Continued)

Even if plaintiff had evidence creating a genuine issue of fact as to whether ASI's construction and development activities had altered the flow of water onto the Schambeau Property, plaintiff's claims would fail for want of evidence that the modification damaged Schambeau.  Again, if an upper landowner such as ASI alters the flow of surface water, that conduct creates liability only where it "unduly burdens" the lower property by causing "substantial damage."  *Holden v. Edwards Specialties, Inc.*, 62 So.3d 1029, 1034 (Ala.Civ.App. 2009) ("Under the modified civil law rule, the upper land owner can alter the flow of surface water to improve his property; however, he has a duty not to unduly burden the lower property by causing substantial damage and not to unreasonably interfere with the possessory rights of the lower landowner.") (citation and internal quotation marks omitted).  The uncontroverted record evidence is that ASI constructed the parking lot, Sonic restaurant and other improvements on its property in 1999, and made no substantive changes or modifications thereafter.  Likewise, the uncontroverted record evidence is that Schambeau did not experience drainage or water problems for 10 years after ASI completed these construction activities.  On this record, a fact finder could not reasonably determine that the drainage problems observed by Schambeau for the first time in the fall of 2009 were caused by ASI's activities dating back a decade earlier.  There is simply no evidence, no argument, and no reason to think that ASI's purported disruption of the

---

inadmissible because the witness does not suggest that she has personal knowledge of this phenomenon or expertise in analyzing the flow of surface water on and across the subject parcels, concedes that she has performed no topographical measurements at the site, and admits that she has not even been on one of the parcels at all.  (*Id.* at 115.)  Such speculative, unfounded opinion testimony is not properly considered on summary judgment.  *See, e.g., Corwin v. Walt Disney Co.*, 475 F.3d 1239, 1249 (11th Cir. 2007) ("Even on summary judgment, a court is not obligated to take as true testimony that is not based upon personal knowledge.") (citation omitted).  Likewise, plaintiff's counsel's reference to "photographs of the ASI property which show a parking lot … directing the water to the Schambeau property" is inadequate.  (Doc. 75, at 2.)  From bare review of the subject photographs, without explanatory exposition, it is not possible to discern what they depict or what (if anything) they show about the flow of water.  Plaintiff provides no witnesses to explain these photographs, but instead relies on counsel's interpretation, untethered to any record facts.  This is improper.  Unsupported statements of counsel in a summary judgment brief are not evidence, and cannot properly be considered.  *See, e.g., Ellis v. England*, 432 F.3d 1321, 1326 (11th Cir. 2005) ("mere conclusions and unsupported factual allegations are legally insufficient" on summary judgment); *Taylor v. Holiday Isle, LLC*, 561 F. Supp.2d 1269, 1275 n.11 (S.D. Ala. 2008) ("Unadorned representations of counsel in a summary judgment brief are not a substitute for appropriate record evidence.").

flow of surface water onto the Schambeau Property in 1999 caused substantial damage to that lower property, where Schambeau never observed any damage or problems of any kind for the next ten years.

### IV.     Conclusion.

In sum, ASI is entitled to summary judgment because the record unambiguously refutes the Amended Complaint's theory that ASI improperly constructed a Waffle House restaurant in a manner that caused surface water to be directed onto plaintiff's land. ASI had no involvement in the construction of that facility; therefore, there are no genuine issues of fact as to any claim actually presented against ASI in the Amended Complaint. Plaintiff is not permitted to replead the complaint on summary judgment to assert a different factual basis for its causes of action against this defendant.

Even if plaintiff could reframe its substantive claims against ASI at the Rule 56 briefing stage to challenge construction and site improvement activities performed by ASI in 1999, ASI would remain entitled to summary judgment because (i) the negligence and wantonness claims are time-barred; and (ii) there is no evidence from which a factfinder could determine that ASI altered the natural flow of surface water onto Schambeau's property, much less that it did so in a manner that caused substantial damage, as required for liability on a continuing nuisance or trespass theory under Alabama's common law of diffuse surface waters.

For all of these reasons, it is **ordered** as follows:

1. The Motion for Summary Judgment (doc. 66) is **granted**. Plaintiff's claims against defendant Alabama Sound Investments, Inc. are **dismissed with prejudice**;
2. The Clerk of Court is **directed** to **terminate** Alabama Sound Investments as a party to this action;
3. All claims against defendant Sonic Restaurants, Inc. having previously been dismissed, the Clerk of Court is **directed** to **terminate** that entity as a party defendant to this action;
4. All of Schambeau's claims asserted against fictitious defendants are **dismissed without prejudice**; and

5.	This action will proceed to trial as scheduled as to plaintiff's claims against defendant Waffle House, Inc., and Waffle House's third-party claims against GECI & Associates, Inc.

DONE and ORDERED this 30th day of December, 2011.

s/ WILLIAM H. STEELE
CHIEF UNITED STATES DISTRICT JUDGE